# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

   v.                                                               **Case No. 05-CR-80**

**QUANDELLA JOHNSON**
        **Defendant.**

## SENTENCING MEMORANDUM

On December 1, 2004, another judge of this court revoked defendant Quandella Johnson's supervised release and sentenced her to eight months in prison. The judge allowed defendant to self-surrender by December 14, 2004, but she failed to report. Six days later, the Marshal arrested her at her home, where she had remained with her two children, ages twelve and thirteen.

The government charged defendant with violating 18 U.S.C. § 3146(a)(2), and she promptly pleaded guilty. The probation office prepared a pre-sentence report ("PSR"), which calculated her offense level ("OL") as 9 (base level 11, U.S.S.G. § 2J1.6(a)(1), minus 2 for acceptance of responsibility, § 3E1.1(a)), and her criminal history category ("CHC") as IV, for an imprisonment range of 12-18 months under the sentencing guidelines.

Neither side objected to the guideline determinations, but defendant requested a downward departure and, under 18 U.S.C. § 3553(a), a non-guideline sentence. The government requested a sentence at the low end of the guideline range. In this memorandum I discuss the parties' contentions and set forth the reasons for the sentence imposed.

## I. FACTS AND BACKGROUND

Defendant had a horrific childhood. Her father (a convicted sex offender) and his friends repeatedly assaulted her from age four to age nine, when defendant and her mother left. Not surprisingly, defendant developed mental health problems, which she masked with drug abuse. Also unsurprisingly, defendant became involved with abusive men including the father of her children, who is in prison for robbery and, more recently, a man named Frank Simmons, who involved defendant in two bank robberies for which she served sixty-three months in prison.

Defendant did well in prison, completing the 500 hour drug program, obtaining her GED, and taking various other classes. However, upon her release she began violating the conditions of supervision, using drugs, missing appointments and counseling sessions, and failing to pay restitution. As noted, a judge revoked her supervised release and sentenced her to eight months in prison, but she failed to report for service of her sentence. Defendant stated that she did not report because she was depressed and did not want to leave her children over the holidays. She also stated that her sister and mother told her that they would not care for her children when she returned to prison. Rather than report or request an extension until she could resolve her child care problems, defendant sat in her house and cried, waiting for the Marshal to come for her. When deputies arrived, defendant opened the door, turned and placed her hands behind her back without being ordered to do so. Defendant's sister took the children in for several months after her arrest, and defendant's mother has cared for them since.

## II. DISCUSSION

**A.     Sentencing Procedure**

After United States v. Booker, 125 S. Ct. 738 (2005), I follow a three-step sentencing process.  First, I determine the applicable advisory guideline range, resolving any factual disputes relevant to sentencing.  Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply.  Finally, I determine the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a).  See, e.g., United States v. Pallowick, 364 F. Supp. 2d 923, 925-26 (E.D. Wis. 2005).

**B.     Application**

**1.     Departure Motions**

Defendant moved for a downward departure on three bases, the first being the abuse she suffered as a child at the hands of her father.  A court may depart on this basis only if the case is extraordinary.  See, e.g., United States v. Pullen, 89 F.3d 368, 372 (7th Cir. 1996); United States v. Roe, 976 F.2d 1216, 1217-18 (9th Cir. 1992); United States v. Ayers, 971 F. Supp. 1197, 1200 (N.D. Ill. 1997).  While defendant suffered serious abuse, I could find no clear link between the abuse and her failure to report.  Thus, while I was authorized to depart on the basis of the abuse, I declined to do so.

Defendant next moved for a departure based on her family circumstances.  Again, to depart on this ground, I must find the case to be extraordinary.  United States v. Canoy, 38 F.3d 893, 908 (7th Cir. 1994).  In addressing departure requests on this basis, I consider three factors.  United States v. Manasrah, 347 F. Supp. 2d 634, 637 (E.D. Wis.

3

2004); United States v. Norton, 218 F. Supp. 2d 1014, 1019-20 (E.D. Wis. 2002); see also U.S.S.G. § 5H1.6 cmt. n.1(B) (2004).  First, I consider the specifics of the family situation (e.g., the number of dependents, any special needs, and the availability of other caregivers).  Second, I consider whether a reasonable departure could keep the family unit intact.   As the Seventh Circuit has noted, "a downward departure for extraordinary family circumstances cannot be justified when, even after reduction, the sentence is so long that release will come too late to promote the child's welfare."  United States v. Wright, 218 F.3d 812, 815-16 (7th Cir. 2000).  Rather, such a departure is most appropriate when the defendant "could be given probation (or home confinement) rather than incarceration with only a small downward departure."  Id. at 815.  Third, I consider whether a departure would be consistent with the purposes of sentencing under § 3553(a).  Defendant did not qualify under this standard.  Other family members were available to care for her children.  Although the situation was less than optimal, the children had a place to go.  Second, because defendant still owed some time on her eight month revocation sentence, I could not grant a departure that would immediately unite defendant and her children.  Therefore, while within my discretion, I declined to depart based on family circumstances.

Finally, defendant moved for a departure based on the totality of the circumstances, including her mental health issues, her reason for committing the offense, and the mitigated nature of the crime.  I concluded that no Commission policy statement clearly applied and that I could more appropriately consider these factors under § 3553(a).  Therefore, I denied the motion and turned to the imposition of sentence under § 3553(a).

### 2. Section 3553(a)

Section 3553(a) requires the court to consider seven factors in imposing sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Upon consideration of these factors, the court's task is to "'impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2).'" United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005) (quoting 18 U.S.C. § 3553(a)). I typically group the § 3553(a) factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). I then consider the types of sentences available, the guidelines and policy statements, and the need to avoid unwarranted disparity in order to produce a reasonable numerical sentence. United States v. Greer, No. 03-CR-194, 2005 U.S. Dist. LEXIS 13937, at *7 (E.D. Wis. June 27, 2005).

### a. Nature of Offense

This was a highly mitigated offense. Defendant failed to report but did not flee the jurisdiction or attempt to evade law enforcement. She committed the offense out of a misguided attempt to care for her children.

### b. Character of Defendant

Defendant was thirty years old, and her only criminal record consisted of the two bank robberies she committed with Simmons. Nevertheless, due to the operation of the guidelines, she fell within CHC IV. Defendant did not move for a departure under § 4A1.3, and I did not formally depart on such basis; however, I noted that most category IV offenders had more serious records.[1]

Defendant's history was also significant for the horrific abuse she suffered at the hands of her father, which led to mental health and substance abuse issues. She got pregnant as a teenager, dropped out of high school, had difficulty holding a job and involved herself with abusive men, all well-documented consequences of such abuse. See Mary E. Becker, Double Binds Facing Mothers in Abusive Families: Social Support

---

[1] The two bank robbery convictions, though "related" and joined for sentencing, scored four points under U.S.S.G. § 4A1.1(a) & (f). Defendant received two more points under § 4A1.1(d) because she committed the instant offense while in "escape status." Of course, the only reason she was in escape status was because she committed the instant offense, i.e., failed to report. Despite the common sense conclusion that this constitutes double counting (she was punished for failing to surrender while in escape status because she failed to surrender), courts have consistently upheld the increase under these circumstances based on the plain language of the guideline. E.g., United States v. Aska, 314 F.3d 75, 77-78 (2d Cir. 2002) (collecting cases). Finally, defendant received one point under § 4A1.1(e) because she committed the instant offense less than two years after her release from the bank robbery sentences. Thus, despite having just one "counted" entry, defendant was in CHC IV. Fortunately, after Booker, courts are able to mitigate the unnecessary harshness that sometimes results from the mechanistic application of the guidelines. See, e.g., Galvez-Barrios, 355 F. Supp. 2d at 961-62.

6

Systems, Custody Outcomes, and Liability for Acts of Others, 2 U. CHI. L. SCH. ROUNDTABLE 13 (1995) (citing research that women raised in abusive families are more likely to enter into abusive relationships as adults); Charles A. Phipps, Children, Adults, Sex and the Criminal Law: In Search of Reason, 22 SETON HALL LEGIS. J. 1, 98 (1997) (stating that adults abused as children frequently have serious emotional problems and an impaired sense of self, which may result in re-victimization; and tend to exhibit avoidant behavior, which may result in substance abuse, suicide, and compulsive behavior such as sexual promiscuity). Despite her tragic background, defendant showed promise in prison, completing the 500 hour drug treatment program and furthering her education. Unfortunately, she struggled on supervised release, submitting numerous positive drug tests and missing others, and failing in treatment.

### c. Needs of Public

I did not believe that defendant was dangerous or a serious risk of recidivism. Although bank robberies are serious crimes, she committed such offenses at Simmons's direction. Prior to the present offense, defendant committed no crimes on her own. However, some confinement was necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct. When a court permits a defendant to self-surrender, abuse of such privilege should result in a sanction.

### d. Consideration of Guidelines, Types of Sentences Available & Need to Avoid Unwarranted Disparity

The guidelines called for a term of 12-18 months. Under the circumstances, I found this range greater than necessary to satisfy the purposes of sentencing. First, it is unlikely

7

that the Commission had defendant's conduct in mind when it enacted the guideline. Although defendant failed to report for service of her sentence, she did not flee or attempt to elude officers. Rather, she stayed home waiting to be arrested and was fully cooperative when the Marshal arrived. Second, she had an understandable reason for failing to report – wanting to remain with her children. Defendant did not believe that her family members would care for her children when she was in prison. I do not excuse defendant's failure to report, but I believe that her mental state prevented her from thinking clearly. In the hierarchy of failure to surrender cases, a depressed mother who stays home with her children for an extra six days around Christmas has to rank among the least serious.

I concluded that a split sentence consisting of four months imprisonment and four months home detention was appropriate in this case. This sentence provided an appropriate sanction, while recognizing the significant mitigating factors present. The sentence hewed closely to the guidelines – were defendant's CHC one lower or her OL two lower, the sentence would have been within the guideline range. The sentence was supported by the particular facts of the case and thus did not create unwarranted disparity.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for four months, to run consecutive to the revocation sentence, as required by statute. 18 U.S.C. § 3146(b)(2). For all of the reasons stated, this sentence was sufficient but not greater than necessary to satisfy the purposes of sentencing. I also ordered defendant to serve a two year supervised release term. Defendant had significant mental health and substance abuse treatment needs, and although she did not fully avail herself of the

8

probation office's resources during her previous term of supervised release, I believed that probation should again make such services available for the benefit of defendant and her children.  Defendant had succeeded in a structured environment; hopefully, this time, she can also succeed in the community.  Thus, as conditions, I ordered defendant to participate in substance abuse and mental health treatment, and, to ensure that she concentrated on her treatment needs and to provide an extra component of punishment, to serve a four month period of home confinement.  Other conditions appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 25th day of July, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge